READE (GREIGG v.). See Case No. 5,804.

---

## Case No. 11,612.
### READING v. BLACKWELL.
[Baldw. 166.] [1]

Circuit Court, D. Pennsylvania. April Term, 1830.

WILLS—REAL PROPERTY— WHEN TREATED AS PERSONALTY—RESIDUARY LEGATEES.

1. Where a testator by his will devised his real estate to his executors. and directed them to apply the rents and profits to specific purposes until the happening of a certain event, and then to sell it, and divide the proceeds among certain residuary legatees: *Held*, that the real estate is in equity to be considered as money, from the death of the testator. for all the purposes of the will.

[Cited in Cropley v. Cooper, 19 Wall. (86 N. S.) 175.]

[Cited in brief in Blatchford v. Newberry. 99 Ill. 33; Leiper v. Thomson, 60 Pa. St. 179; Milhollen's Adm'r v. Rice. 13 W. Va. 535.]

2. If any of the residuary legatees who were alive. and capable of taking at the death of testator, die before the time of sale, their shares go to their next of kin as personal property.

3. Where a testator gave special legacies to the same persons who were residuary legatees, and then gave the residue of his estate to the legatees to be divided between them according to their several legacies: *Held*, that the residuary legacies were vested, and on the death of any of the legatees before the time of distribution, became payable to their representatives.

[Followed in Rinehart v. Harrison, Case No. 11,840.]

[Cited in Richey v. Johnson, 30 Ohio St. 294.]

This case arose on the will of Henry Harrison, of Princeton, New Jersey. which is as follows: "In the name of God, amen, this is the last will and testament of Mr. John Harrison, of township of West Windsor, county of Middlesex, and state of New Jersey. First; I will and direct that my executors pay just debts and funeral expenses as soon as may be after my death; and that they collect the moneys which shall be due and outstanding at that time, to enable them to fulfil the purposes of this my will. Secondly:

---

[1] [Reported by Hon. Henry Baldwin, Circuit Justice.]

I will and bequeath unto the several persons hereinafter named, the following legacies: that is to say; to my daughter, Cornelia Earl, 2000 dollars; to Susan Earl and Harrison (the daughter and son of the said Cornelia), 800 dollars each; to my sisters, Grace Dennis and Mary Reading, 1200 dollars each; to my nieces, Kitty White, Susan Hough, Amy Prevost, and Sally Stockton, 1200 dollars eacu; to my nephews, James W. Hamilton and Henry Beckman, 2000 dollars each; to my nephew, William Hamilton, 1000 dollars; to Henry Harrison Hamilton (the son of said William Hamilton), 800 dollars; to Adel Dubarry and Edmond Dubarry, 1000 dollars each (the two last legatees are the chiluren of my deceased niece, Nancy Dubarry); to John Harrison Blackwell, 800 dollars (the last named legatee is the son of Elijah Blackwell); to John H. Prevost, 800 dollars (the last named legatee is the son of my niece, Amy Prevost); to Eliza T. Blackwell, 500 dollars (the last named legatee is the wife of Elijah Blackwell); to the trustees of the church at Princeton, for the support of the gospel in the said church, 500 dollars; to the trustees of the theological school lately established in Princeton (provided the establishment remains there). and for the use of said establishment, 1000 dollars; to Harrison Hough, 800 dollars (the last named legatee is the son of my niece, Susan Hough). And I do will and direct, that the above legacies be paid by my executors to such of the above legatees as shall be of the age of twenty-one years at the time of my death, as soon as may be after my decease; as to those who shall not be of the age of twenty-one at the time of my death, when they respectively attain the age of twenty-one years. Thirdly; I give and devise my real estate in the city, unto Ercurius Beatty, Elijah Blackwell, and Joseph Aunin, hereinafter appointed my executors of this my will, and to the survivor of them and their heirs at common law, of such person in trust to receive the rents, issues and profits thereof, and to invest the same in some safe and productive fund; and to apply the principal. until James H. White (son of my niece. Kitty White) shall attain, or in case of his death, might have attained the age of twenty-one years; to the payment of the yearly sum of 300 dollars to my son, Henry Harrison, if he should return home. and not otherwise; and to the payment of the before named legatees as are under age, as they shall respectively arrive at age, and their legacies become due. And after. the aforesaid James Hamilton White shall, or in case of his death, might have attained the age of twenty-one years, then to sell the real estate in the city of New York, for the best price which can be obtained therefor; and in case of my son's death, to apply the proceeds of such sale, and the rents and profits. in payment of the legacies as aforesaid; and to carry the surplus, if any, to the residuary part of my estate;

but if my son Henry Harrison should be living, and return home at or before the said James Hamilton White arrives at the age. or in case of his death, might have attained the age of twenty-one years when such sale is to be made, to pay the one half of the amount of such sale to the said Henry Harrison aforesaid, or to affix annuity for his support during his natural life, at the discretion of my executors, and the other half to be carried to the residuary part of my estate. Fourthly; all the rest of my real estate. wheresoever to be found and situate, I will and direct shall be sold by my executors, or the survivor. as soon as may be after my death, and the proceeds thence arising, applied to the execution of this my will; and if any surplus then remain, I give and bequeath such surplus, together with all the rest and residue of my estate, of what nature and kind soever, and the profits thereof, which may remain unappropriated, unto the aforesaid Grace Dennis, Mary Reading, Kitty White, Susan Hough, Amy Prevost, Sarah Stockton, Cornelia Earl, James H. Hamilton, and Henry Beckman, to be divided amongst them in the same proportions as are observed in the express legacies before bequeathed; and if any of the legatees aforesaid, to whom I have given particular legacies, before they attain the age of twenty-one years should die, then I will and direct that their legacies shall fall into the residue of my estate, and be paid to the residuary legatees in the same proportions as aforesaid. Lastly; I nominate and appoint Ercurius Beatty, Elijah Blackwell, and Joseph Aunin, esquires, to be executors of this my last will and testament; hereby giving them full power, and the survivor of them, to make and execute good and sufficient titles, in fee simple, to the purchaser or purchasers of any of my real estate. And I do further give and bequeath 150 dollars to each of my executors, in full lieu of commissions and satisfaction for the execution of this my will. And I do hereby revoke and disannul all former wills and testaments by me made. hereby declaring this to be my only last will and testament. In witness whereof, I have hereunto set my hand and seal. and have signed my name in the margin of the first page, the 17th day of June, 1815." The testator died on the 22d of June, 1816. The legatees named in the will all survived him. James H. White arrived at twenty-one years of age on the 26th of March, 1830. Sarah Stockton, Henry Beckman and Grace Dennis died of full age, but intestate and without issue, before James H. White came of age. Henry Harrison, the son of the testator, never returned to this country, and died abroad before March, 1830. Immediately after James H. White became of age, the executors sold the real estate in New York and received the purchase money. which they hold, subject to the order of the court. The complainant is a sister of the testator, and one of the pecuniary and resid-

uary legatees, claiming one-sixth of the surplus of the estate in the hands of the executor, on the ground that on the death of the three legatees above named their shares lapsed into the residuary fund, for the benefit of such of the residuary legatees as should be alive at the time James H. White became twenty-one years of age. The respondent is the surviving executor of the will. The question on which the case turned was, whether the residuary legacies of the deceased legatees passed, on their death, to their respective next of kin, or fell into the residuary fund. This fund is composed of the surplus of the whole estate of the testator, but principally of the proceeds of the sale of the property in New York, after payment of the debts and pecuniary legacies.

Joseph R. Ingersoll, for complainant.

The distinction between vested and contingent legacies is, whether the contingency applies to the mere payment, or to the gift. If the gift is absolute, but the payment only postponed, the legacy is vested as a bequest of 400 pounds to A, to be paid in one year after the testator's death (Jackson v. Jackson, 1 Ves. Sr. 217); or after he had served out his apprenticeship (Sidney v. Vaughan, 2 Brown. Parl. Cas. 254); or to be paid at twenty-one (Bolger v. Mackell, 5 Ves. 509). But when the contingency is applied to the gift in the nature of a condition precedent, it is contingent; as a devise to raise "portions to become due and vested at the expiration of two years after my decease, if my debts shall be then paid," the legacy did not vest till the debts were paid. Bernard v. Mountague, 1 Mer. 422. So if to be paid her at the time of her marriage, or three months after, provided she marries with the consent of my sons. Atkins v. Hiccocks, 1 Atk. 500. The testator looked not to the time, but the fact of the marriage, which makes it a legacy on condition, that cannot vest till it is performed. When there is a certain time fixed, not to the thing, but the execution of it, and the time being so fixed must necessarily come, the legacy is vested; but when the time is eventual and may not come, it is contingent. Id. A legacy to A, at her age of twenty-one or day of marriage, to be paid to her with interest, is vested. If given to one at his age of twenty-one, it is contingent. If given to one to be paid at the age of twenty-one, it is vested. Clobberie's Case, 2 Vent. 342. If given for and towards marriage, it is contingent. Dame Latimer's Case, Dyer, 59b. So where the dividends of stock were given to A till he attained thirty-two, and the executor was directed then to transfer to him. Batsford v. Kebbell, 3 Ves. 363; Elwin v. Elwin, 8 Ves. 547; 5 Ves. 514. So wherever the time is annexed to the substance of the bequest (Sansbury v. Read, 12 Ves. 75); to the legacy itself, and not to the payment (Smell v. Dee, 2 Salk. 415, which was a bequest to A at the end of ten

years after my decease); so to A now, in the custody of B, 2000 pounds at the age of twenty-one, to be paid by my executors in England (Onslow v. South, 1 Eq. Cas. Abr. 295, pl. 6; s. p., 3 P. Wms. 20). Where testator directed his land to be sold, and gave 200 pounds to his eldest son "at his age of twenty-one" (Cruse v. Barley, 3 P. Wms. 19), time in such cases being considered as a description of the person to take, the legacy does not vest (5 Ves. 514). When a legacy is given "in case" the legatee marries with consent (Elton v. Elton, 3 Atk. 504), or to be paid to her at twenty-one, in case she lives to twenty-one (Knight v. Cameron, 14 Ves. 389), it is contingent, the words "in case" being conditional. So is the word "when," if not qualified in the will as a legacy given to A when he attains twenty-one. Hanson v. Graham, 6 Ves. 243. So the word "then"; as a devise to A, if he attains to twenty-one or have issue, then to the said A, &c. Brownsword v. Edwards, 2 Ves. Sr. 243. So if to A for life, and from and after her death to B, if living at the time of her death. Denn v. Bagshaw, 6 Durn. & E. [6 Term R.] 512. These are conditions, but if interest is given in the meantime, this is showing the intention to be, that the legatee had an interest in the principal (Fonereau v. Fonereau, 3 Atk. 645), and the legacy vests. So where provision is made for maintenance of the legatee out of the principal of the legacy. Hoath v. Hoath, 2 Brown, Ch. 4. Where a legacy is charged upon land on a contingency, the legacy does not vest till the contingency happens, unless a contrary intimation is expressed or to be inferred from the will, though it would have vested had it been a charge on personal property. Pawlet v. Pawlet, 2 Vent. 366; s. c., 1 Vern. 204; Yates v. Phettiplace, 2 Vern. 416; Jennings v. Looks, 2 P. Wms. 276; Stone v. Massey, 2 Yeates, 363. Where a residue is given on a contingency, or when there is no gift, but a direction is given to transfer it from and after or at a given event, the vesting will be deferred until the event has happened, unless the will shows a contrary intent. 1 Rop. Leg. 383. In the present case the will shows no intention of the testator that the residuary legatees should take if they died before James H. White came of age; there is no part of it in which there are any words of transmission, as "heirs, assigns, executors," &c. The fund being personal, and the legatees named, shows the intention to be not to carry the interest beyond themselves; the survivors take as if those who were dead in March, 1830, had died in the lifetime of the testator, or as they would have taken had there been words of survivorship which relate to the survivors at the time of division. Cripps v. Wolcott, 4 Madd. 12. The words of the will are: "If any of the persons to whom I have given particular legacies shall die, &c.," their legacies fall into the residuary fund, which apply to the residuary clause, being in immedi-

ate connection with it. The residue is a mere contingency, depending on there being a surplus, and there was no intention to have such fund in existence till March, 1830, as the sale was not to be made till then. One half of the residuum was to go to his son, if he returned previously; which shows the intention to postpone the vesting the fund till the arrival of J. H. White to twenty-one.

Charles J. Ingersoll, for respondent.

This is a contest between legatees, in which the court will incline to make the legacy a vested one, more strongly than in a case between an heir and legatee. This is a bequest of personal property, in which the time attaches to the payment, and not to the legacy itself; it therefore vests, and is not like the case of a legacy charged upon land. 2 Bl. Comm. 513; 3 Wood. Lect. 512; 2 Fonbl. 266, 371; 1 Rop. 151; Co. Litt. 237a, note 152; Chandos v. Talbot, 2 P. Wms. 372. It does not become contingent because its enjoyment is postponed to an indefinite period. 3 Brown, Ch. 471; 4 Brown, Ch. 491, note; 11 Ves. 489; 13 Ves. 336. And courts favour the vesting of legacies, so as to make them transmissible to the legal representatives of the legatees (7 Ves. 453; 5 Ves. 140); especially where the dividends are payable till the contingency happens (4 Ves. 499). Where lands were directed to be sold on the death of the testator's widow, and the proceeds divided among his children when they arrived at twenty-one, the share of a child who arrived at twenty-one, but died before the widow, was a vested interest. Price v. Watkins, 1 Dall. [1 U. S.] 8. So where the postponement of payment is owing to the situation of the property, out of which the legacy is payable. 2 Yeates, 368; 5 Bin. 601. If no time is fixed for the payment of a portion, payable out of land, it is payable presently, and is vested. 2 Madd. 23. The particular provisions of this will make these legacies vested, according to the settled principles which govern all the cases. 1 Atk. 500; 5 Ves. 509; 2 Vent. 342; 3 Ves. 362; 12 Ves. 75; 8 Ves. 546. No legacies are given except to the members of the testator's family; and no personal preference is given to any but James H. White, showing the intent to be, not to have the legacies accumulate for the benefit of any individuals, but to have them distributed among the descendants of those who should die before the arrival of J. H. White to twenty-one. It would defeat this intention to give any thing to those who are not of his family, or out of the line of descent from the objects of his bounty. All the legacies are payable absolutely. No contingency applies to the thing given, but only to events which must happen; and all did happen. No lapse was contemplated but in one event, which was provided for,—the death of minor legatees before the period of distribution; their legacies fell into the residuum; had the testator intended that the legacies of the adult legatees should lapse on the same event he would have so expressed himself. But as the will does not direct that the shares of the deceased residuary legatees shall go to the survivors, the court cannot add such a provision. There was no contingency which could defeat the legacies, or the estate out of which they were payable; the land was to be sold at a certain period, and for all the purposes of the will was personal property from the time when it took effect, and the legacies being charged upon personalty, became vested. 2 Yeates, 369.

BALDWIN, Circuit Justice. This case turns on the question, whether by the will of Mr. Harrison, the residuary legacies of Sarah Stockton, Grace Dennis and Henry Beckman, who were of age at the death of the testator, but died intestate and without issue, before James H. White became, or would, if living, be twenty-one years of age, go to their legal representatives, or fall into the residuary fund, for the benefit of the residuary legatees who were then alive. The fund out of which the residuary legacies are payable, is principally the proceeds of the sale of real estate in New York, now in the hands of the executors for distribution, and has been considered by the counsel on both sides, as personal property at the death of the testator, for all the purposes of the will (without entering into any argument on this point, though it is one which must be settled before the main question can be decided), and converted into money. The general principle, that land directed to be sold, is, in equity, considered as sold, and as in money, is too well settled to be questioned; on this point, the decisions of the supreme court of Pennsylvania, in Price v. Watkins, 1 Dall. [1 U. S.] 8, of the supreme court of New Jersey, in Fairly v. Kline, 2 Penning. [3 N. J. Law] 755, and the supreme court of the United States, in Craig v. Leslie, 3 Wheat. [16 U. S.] 577, are binding on us as authority. The terms of this will are too explicit to admit of a doubt of the case coming within the rule; the real estate did not descend to the heir for a moment, it passed immediately to the executors; the rents were specially appropriated till James H. White came, or would become of age, when the direction to sell was positive and absolute, and the whole proceeds were to be applied to the purposes of the will. No contingency could happen, by which any part of the fund could revert; the whole must go either to the residuary legatees, or the representatives of those who died before the time of division. A contingent provision was made for the testator's son, his heir at law, on condition of his return to this country; but this provision was made out of the proceeds of the land, and not a charge upon it; it was made too on a condition precedent, which was not performed, so that the real estate could in no event revert to the heir

as land, or he become entitled to any part of the proceeds as money. The inheritance was destroyed to all intents and purposes, and the estate irrevocably converted into personalty, and so we must consider it for all the purposes of the will.

In some respects its meaning admits of no doubt. It directs the residuary fund to be divided among the residuary legatees, in proportion to the express legacies given to them respectively; the division being unequal, they take as tenants in common, and not as joint tenants. The rents and profits, during the lifetime of his son, until the maturity of James H. White, are specifically appropriated; the residuary fund is, therefore, a remainder, bequeathed to tenants in common, who were all alive and of full age at the death of the testator, and fully capable of taking the bequests.

The only lapse provided for in the will, is in case of any of the legatees, who were minors at the death of the testator, should die before twenty-one; their specific legacies shall fall into the residuum, and be paid to the residuary legatees, in the same proportions as before directed. This lapse is for their benefit, and as none other is expressly provided for, it is a strong indication of the intent of the testator, that there should be no other lapse in any event. The two events on which the division was to be made, are the arrival of James H. White to twenty-one, or the time when, if living, he would have attained that age, and the death of the testator's son, both of which were certain to happen. If, therefore, there was any interest vested in the residuary legatees before the happening of these contingencies, it could not be defeated. This brings us to the main question, whether there was any such interest: in the consideration of which we shall refer to the general principles established in cases in equity, rather than to the cases themselves. It is not necessary to the vesting of a legacy, that it be capable of present enjoyment in possession; it is vested when the gift is immediate in interest, of a present right of enjoyment to a person capable of future reception in possession, on the happening of some event which is certain. It is contingent when the gift is prospective to a contingency, when no present right to future enjoyment is given, or given to a person who has not a present capacity to take and enjoy the thing given, let the contingency happen when it may. The present gift and the present capacity refer to the death of the testator, when the will takes effect. If the contingency is attached to the thing, or right given, or the person to take, the interest is contingent; if it is attached to the time when the thing or right is to be enjoyed, it is vested, the contingency referring merely to the payment or division. In the former case, it is in the nature of a condition precedent, which is the consideration of the gift; but in the latter, it is the

mere postponement of payment of what is due by absolute right. This does not make the legacy contingent, unless the postponement arises from the situation of the legatee on account of the want of an existing present capacity to take and enjoy; or when the ascertainment of the person to take, is referred to a future period, and the right to take depends on his being in esse at that time. Nor if the postponement is owing to the situation of the estate or fund, out of which the legacy is to be paid, can the legacy on that account be held to be contingent. Vide 1 Rop. Leg. 375 et seq., and cases cited. The words of this will, speaking at the death of the testator, are in præsenti. "I give and bequeath," the gift is present and absolute, the legatee is alive, and capable of taking and enjoying, the thing bequeathed was in existence, and must be enjoyed on certain events which attach to the distribution or payment only, and not to the right to the legacy. By the mode of distribution among the residuary legatees, the testator has referred to the special legacies, which are unquestionably vested in the adult legatees, and do not lapse by their death. As these legacies are made the standard of distribution among the residuary legatees, it is clear that the residuary fund should go to the same persons who were entitled to the special legacies given to those who should die before they arrived at twenty-one. The surviving residuary legatees could not take the special legacies of the deceased adult legatees; if then we decree the residuary fund to the survivors, we make a rule of distribution among them incompatible with that prescribed in the will. In looking at its provisions, it is apparent that the object of the will, in postponing the payment, was for the convenience of the estate out of which the legacies are payable; it was to provide a fund from the rents and profits to meet specific purposes, without the least reference to the situation of the residuary legatees. When these purposes were effected, the executors became their trustees as to the remainder bequeathed to them, the right to which in possession was consummated at the time fixed for distribution. This remainder was the capital of the fund created by the sale of the real estate; it was carefully reserved by the testator for the residuary legatees, who were his nearest relatives, and he could not have intended, that on the death of any of them, their shares should be taken from the next of kin, and go to strangers to the deceased.

We are, therefore, clearly of opinion, that by the words of the will construed according to the best established rules, the residuary legatees had a vested right to their respective proportions of the residuary fund at the death of the testator, which, on the death of any of them before the time of payment, passed to their next of kin. Vide 1 Rop. 380, 394, 397, 436.

In addition to the settled course of adjudications in courts of equity, we have also, in support of our opinion, the case of Fairly v. Kline, before referred to. In that case, the testator disposed of his personal estate among his wife and children, he devised his homestead plantation to his wife for life, or while she remained his widow; after her death or marriage, he directed it to be sold, and gave the proceeds thereof to his eight children, whom he named, to be equally divided among them, share and share alike. One of the children died before the death or marriage of the mother, or the sale of the land; and it was held, that her interest was vested, and on her death went to her representative. 2 Penning. [3 N. J. Law] 755. This case is entitled to great respect, on account of the character of the court which decided it; the more especially, as evidence of the law of New Jersey, in which state the testator was domiciled and resided at the time of his death. 1 Bin. 336.

Being then of opinion that the complainant is entitled to no part of the fund bequeathed to the deceased residuary legatees, our next inquiry is, whether any provision made for the son of the testator, can have any effect on the case. It is admitted, that he never returned to this country, and died before the time when J. H. White could become of age. This is the very case contemplated by the testator, in which he directed the whole residuum to be distributed among the residuary legatees; this direction must be followed, if the legal effect of the limitation in favour of the son, does not prevent it. The first provision for the son, was the payment of an annuity of 300 dollars out of the rents and profits of the real estate, "if he should return home, and not otherwise;" this is clearly given on a condition precedent, and as the son never returned, was no charge on the estate or its proceeds. The next is a direction to sell the real estate; "and in case of (his) son's death, to carry the surplus, if any, to the residuary part of (his) estate; but if my son, Henry Harrison, should be living, and return home at or before J. W. White arrives at the age, or in case of death, might have attained the age of twenty-one when such sale is to be made, to pay one half the amount of such sale to the said H. H., as aforesaid, or to affix annuity for his support," &c. This provision was made dependent on an act to be done by the son, in a definite time, which made its performance a condition precedent, and indispensable to the vesting of any right to the surplus; it has not been performed, and the events contemplated by the testator have both happened, on which a final and absolute distribution of the fund is directed. Neither of these provisions for the son affecting the disposition of the fund, it must be paid to the surviving residuary legatees, and the next of kin of those deceased, in the proportions of the special legacies to them respectively; the next of kin taking by representation, the survivors per capita. The consequence is, that the complainants take nothing by their bill, and it must be dismissed.